WARREN N. TRUSDELL, appellant,

and

AARON O. PRICE, respondent.

Where T. had, before the transaction in question, been accustomed to obtain money for B., and B. had, by a general power of attorney, transferred to T., to secure his indebtedness, all moneys payable on a city paving contract,—*Held,*

(1) That no particular trust arose from such transfer, by virtue of which T. must reserve sufficient funds to indemnify P., an endorser on one of B.'s notes, negotiated by T., and used in the paving contract.

(2) That, if such trust had existed, it would have been personal between T. and B., from which P. could derive no benefit, and subject to B.'s release at any time.

On appeal from a decree of the vice-chancellor, reported in *Price* v. *Trusdell*, 1 *Stew.* 200.

REED, J.

This is an appeal from a decree advised by the vice-chancellor. The facts are these : One Samuel Barber, on July 9th, 1872, entered into a contract with the city of Newark to pave Broad street. Price and Trusdell, the parties to this suit, were sureties for Barber's fulfillment of the terms of his contract. Previous to the signing of this contract, Trusdell had been accustomed to raise money for Barber. After the signing of the contract, Barber was anxious to raise money to carry it into execution. He applied to Trusdell for the purpose. Trusdell raised him $25,000, on three notes drawn by Barber to the order of one Thomas H. Price; two were for $8,000, and one for $9,000. Each note was endorsed by one Jacob Schultheis, and the two $8,000 notes were then endorsed by Trusdell as third endorser, and by Aaron O. Price as fourth endorser, while the $9,000 note was endorsed by said Price as third, and by Trusdell as fourth endorser. On the 24th of July, 1872, Mr. Barber, their maker, gave to Trusdell two orders, one upon the

auditor and the other upon the treasurer of Newark, and directed those officers respectively to pay to Trusdell all moneys due or to become due upon the paving contract. Upon these orders a large amount of money was paid by the city of Newark to Trusdell as the work of paving progressed, in all over $80,000. The two $8,000 notes, above mentioned, were paid by Mr. Trusdell, but the $9,000 note was not paid, but Mr. Price, the third endorser, was compelled to take it up, and he still holds it. Price filed his bill in this case against Trusdell, to compel him to pay the $9,000 note so taken up and held by Price, on the ground that the orders given by Barber to Trusdell were given to Trusdell, and the moneys paid to him under them in trust, that he should apply the moneys so received in paying the three notes mentioned. Outside of such alleged trust, Price has no claim against Trusdell. Trusdell is a subsequent endorser, and, by well-settled legal rule, Price can look only to the preceding parties.

The ground-work of the bill of complaint is an understanding between Barber, Trusdell and Price, at the time these notes were drawn and negotiated and the orders were given, that the notes were secured by the money to be received from the city of Newark. The statement is to the effect that an express trust was created in favor of both Barber and Price that such moneys to be received by Trusdell should be appropriated primarily to the payment of these notes. This feature of the case, however, entirely disappeared subsequently, and the evidence and argument in the cause were shaped so as to present a quite different case. There is no evidence whatever to show any such arrangement to which Price was a party; but; on the contrary, it appears that Price declined to have anything to do with any assignment to himself of the fruits of the paving contract.

It is then insisted that the evidence shows that an arrangement was made between Barber and Trusdell that he (Trusdell) should apply the proceeds received from the paving contract upon these notes; that thus Barber had a

right to insist upon the application of the said moneys in accordance with such arrangement, and that it thereby follows that Price, endorser and payer of the same debt, can invoke the aid of this court, and, by substituting himself for Barber, the principal debtor, he can stand upon Barber's rights. Trusdell denies the existence of this arrangement. Trusdell's position is, that he was accustomed to raise money for Barber; that he raised money previous to his negotiation of these three notes, and that he loaned him money subsequent thereto; that these orders were received as general security, and there was no understanding that the proceeds from them were to be applied primarily to any particular part of the current obligations of Barber to him. From these orders there was received by Trusdell a sum much more than sufficient to pay these notes. But all that he did receive has been applied to the payment of the two $8,000 notes and other obligations of Barber. There is no surplus unappropriated. The primary question which Price raises is, whether these three notes were, by Trusdell's promise, to be first paid. He insists that such was the understanding between Trusdell and Barber.

As to what conversation took place at the time of the negotiation of the notes and the signing of the orders, there is only the testimony of Barber and Trusdell. That testimony was taken four years after the event of which it purports to be an account. Our experience of the fallibility of the memory will lead us to believe that only in extraordinary instances can the exact words be reproduced after such an interval. The account of the words used is generally the statement of what we would now say if we were placed in the old position, and desired to express the sentiments which we now think we then felt and understood, and which we think other parties then felt and understood. Although Barber now asserts that Trusdell said he would draw the money and see these notes paid, I am convinced that Barber did not then understand that there was any special agreement concerning the application of the money

to these notes in preference to other notes. At that time Trusdell had other notes, or was endorser upon other notes, of Barber's. The whole detailed transaction has impressed me with the conviction that there was no specific agreement about these three notes. He seems to have negotiated these notes just as he had others. He did not procure Aaron O. Price's endorsement upon them. He, as broker, treated it as any other paper, and the orders were taken as additional security, for the benefit of no particular endorser and to be applied to no particular note. Barber's admission to Price, in the presence of Mr. McCarter, in Washington city, is utterly inconsistent with his present position that Price had any interest in such assignment of the paving contract, directly or through an agreement with Barber. The various promises of Trusdell to pay or to take care of the $9,000 note, are adduced. These promises, assuming them to have been made, are only important as evidence of a trust. In any other aspect they can have no force. They have no original obligation upon which to base a legal or equitable claim, because they are without consideration, and void by the statute of frauds, as contracts to pay the debt of another. As evidence of such a trust as Price claims, I do not think they are important. In his conversation with Mr. Coult, in which he said the $9,000 note was to be paid out of the last payment on the paving contract, and he had no doubt it would be paid, he yet insisted on his right to pay himself first. All his other promises were based on the idea that the amount of money to come from the paving contract would settle all claims between him and Barber. It was undoubtedly upon this supposition that he was willing to take care of Price.

There is also introduced an unsigned agreement, prepared by Mr. McCarter, dated July 7th, 1873. This is said to have been prepared with the knowledge of Mr. Trusdell, and therefore he assented to the recitals therein. The paper was designed to fix the method by which the money received, or to be received, should be appropriated. After reciting

the giving of the two orders of July 24th, it recites that the purport of giving them was to transfer all moneys as collateral security for advances of money to Barber made or to be made by Trusdell and the other Price, Thomas H. But it convincingly appears, from the testimony, that the paper had its origin in the desire of Barber to do something to satisfy Aaron O. Price, who was becoming clamorous for the payment of the $9,000 note. That at the time Barber was on the brink of bankruptcy, and the recital was put in, not as an assertion of the truth, but to give a color of truth to what was not true—namely, that this paper was not the first arrangement, but was carrying out and evidencing a previous arrangement, so old as not to be affected by the bankrupt law. Besides, another contract, for the same purpose, which was afterwards signed, contained a different recital. If the recital had been true, then Barber cut out all benefit which Aaron O. Price might have had under such an arrangement, by covenanting that Trusdell should apply the money from such contract first to the payment of all notes or obligations of any kind held by Trusdell against Price. By the agreement of the same date, but executed about a week later, Barber did cut out all right of the complainant to such moneys. My conclusion, then, is, that a trust never existed by which Trusdell was bound to Barber to apply the moneys received from the paving contract to the payment of this note of $9,000. If I had reached a different conclusion, I think this trust was personal, and that Barber had the right to release the trustee from his obligation at any time. The agreement of July 7th did so release Trusdell, and thereafter neither Barber, nor any one in Barber's place, could urge any equity against Trusdell. *Hill* v. *Gomme*, 5 *Myl. & Cr.* 250; *Crowell* v. *Hospital of St. Barnabas*, 12 *C. E. Gr.* 650. Nor am I able to perceive that any new equity arose by which (upon the assumption that a trust existed) Price, a stranger to the agreement, could ask its enforcement. No change in the condition of the respondent is shown to have occurred by

reason of the supposed existence of such a trust, or by any act of Trusdell relative thereto.

I think the decree should be reversed.

Decree unanimously reversed.